SORENSON et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1906.)

No. 2,249.

1. CRIMINAL LAW—EVIDENCE—CONFESSION OF ONE NO EVIDENCE AGAINST ANOTHER JOINTLY TRIED.

A confession of one of two defendants jointly charged and tried for the same crime is inadmissible against the other, when made in his absence and after the crime was committed.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1002.]

2. SAME—CONFESSION—TEST OF ITS ADMISSIBILITY—STATEMENT BY OFFICER.

The making of a confession by one charged with crime, in order to make it admissible in evidence against him, must have been free, voluntary, and without compulsion or inducement of any kind, and when it appears that an officer of the United States, authorized to investigate the commission of offenses against its laws and to make arrests therefor, either says to an accused who has been arrested and is held in custody that he has an absolutely good case against him, or advises him that the thing for him to do is to plead guilty and throw himself on the mercy of the court, and that another offense against the state laws will then probably be overlooked, a confession so induced, in whole or in part, is inadmissible.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1146, 1175, 1178, 1181.]

(Syllabus by the Court.)

In Error to the District Court of the United States for the Southern District of Iowa.

W. A. Spurrier (E. C. Mills and E. D. Perry, on the brief), for plaintiffs in error.

Lewis Miles (George B. Stewart, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. Sorenson and Hodge, the defendants below, were jointly indicted, tried, and convicted under section 5478, Revised Statutes [U. S. Comp. St. 1901, p. 3696], for the burglary of a post office at Van Meter in the state of Iowa on the night of September 29, 1904. At the trial the government introduced in evidence, over the objection and exception of the defendant Hodge, an alleged confession of Sorenson made on October 20, 1904, in the absence of Hodge, wherein Sorenson stated that Hodge participated in the crime. The receipt of this statement was error. The court should have excluded Sorenson's declaration against Hodge, and, if it was competent evidence against Sorenson, it should have admitted it against him alone. Where two or more defendants are jointly tried for the same offense, or for a conspiracy to commit it, the declaration of no one of them, made in the absence of another after the completion of the offense, is competent evidence against the latter. It is hearsay. Sparf v. U. S., 156 U. S. 51, 56, 15 Sup. Ct. 273, 39 L. Ed. 343; Logan v. U. S., 144 U. S. 263, 309, 12 Sup. Ct. 617, 36 L. Ed. 429; Brown v. U. S., 150 U. S. 93, 98, 14 Sup. Ct. 37, 37 L. Ed. 1010.

A post office inspector testified that on October 20, 1904, each of the defendants confessed to him his commission of the crime, and that he made no promise of reward or immunity and made no threat to either of them. According to his testimony the facts and circumstances pertinent to these confessions were these: The defendants were arrested on October 17, 1904. On the next day the inspector took each of them separately out of his cell and upstairs into an office used by the police, where Sorenson denied any knowledge of the robbery, and Hodge "would neither deny or admit he was in the robbery." The witness testified:

"There was nobody present except the man I was talking to and myself. I took them up separately. I took Sorenson up first, and he said he had nothing to do with it. Had about a five-minute talk with him at that time. I told him I had an absolutely good case against him. I brought him up myself and took him down myself and had the conversation myself."

After these conversations the inspector caused the defendants to be put in adjoining cells, where they could talk with each other, saw them every day, and on the morning of October 20, 1904, he again took them out one at a time and talked with them, and he testified:

"I asked Hodge if he was ready to talk to me to-day, and he said: 'I think I am.' I asked him if he was ready to tell me what he knew about the Van Meter robbery. He said he was. I asked him then, 'Was you in it,' and he says, 'I was there.' I says, 'How much did you get out of it,' and he says, 'Thirty dollars.'"

The witness testified to many other questions and answers during this conversation, but to no statement from Hodge which was not ex-

tracted from him by an inquiry of the inspector. He testified that he took Sorenson out of his cell to the fire and police room on the same day, and that, while he and Sorenson were alone in the room, the latter said that he was in the Van Meter post office robbery. These were other parts of his testimony:

"I never wanted him to tell me. It was not the object of those interviews. It was to get the facts. I didn't think of getting any other witness there when he made the confession. He did not want anyone to know he said this to me. * * * He said he wanted to plead guilty of the charge of robbing the Van Meter post office, and tears were running down his cheeks, and he asked me to intercede with the judge, and, if we could arrange to have the sentence suspended or a parole, he would come out and go to work and would turn out more criminals than I ever dreamed of. * * * I told him I did not know what they would get if they pleaded guilty, that they could throw themselves on the mercy of the court and take their chances. I told them that by serving a term in the government case that the state case would probably be forgotten. The thing for them to do was to plead guilty and throw themselves on the mercy of this court, and the matter probably would be overlooked in the state court. * * * They made these statements while they were prisoners. Sometimes they were handcuffed when taken from one place to another. I carried a loaded revolver all the time. I took my gun out in the presence of Sorenson and asked him if that was the gun he had at Van Meter. It was the gun found on him when he was arrested."

Immediately upon the close of the cross-examination of this witness counsel for the defendants moved to strike out all his testimony relative to these confessions, upon the ground that it was incompetent, irrelevant, and immaterial. The motion was denied, an exception was noted, and this ruling was assigned as error.

Counsel for the government argue that the statements of the inspector that the state's case would probably be forgotten, if the defendants pleaded guilty to the case of the United States, were not made until after the confessions were extracted. But the evidence does not establish this fact, and as the burden was upon the government to prove that the confessions were voluntarily made before they became admissible, and any doubt upon this subject must be resolved in favor of the defendants, the contention cannot be sustained.

For more than 200 years the law of England and America has been that confessions induced by compulsion or by any cause legally sufficient to engender in the mind of the accused hope or fear in respect of the crime charged are inadmissible as evidence of the guilt of the accused.

In 2 Hawkins, Pleas of the Crown (8th Ed.) p. 595, § 34, there is an admirable statement of the law upon this subject, which seems to have been copied from a note to the sixth edition of that work, and which reads in this way:

"And as the human mind under the pressure of calamity is easily seduced, and liable, in the alarm of danger, to acknowledge indiscriminately a falsehood or a truth, as different agitations may prevail, a confession, whether made upon an official examination or in discourse with private persons, which is obtained from a defendant either by the flattery of hope, or by the impressions of fear, however slightly the emotions may be implanted, is not admissible evidence; for the law will not suffer a prisoner to be made the deluded instrument of his own conviction."

The fifth amendment to the Constitution of the United States provides that "no person shall be compelled in any criminal case to be a witness against himself," and a confession compelled by an inspector or by a private citizen is as obnoxious to this prohibition as one compelled by a magistrate or by a court. The learned, exhaustive, and authoritative declaration of the rule upon this subject and of the appropriate practice in its application, which is found in the opinion of the Supreme Court delivered by Mr. Justice White, in Bram v. U. S., 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568, renders any further discussion of the law of this case futile. A few excerpts from that opinion may be instructive. At page 542 of 168 U. S., page 187 of 18 Sup. Ct. (42 L. Ed. 568), the court says:

"The legal principle by which the admissibility of the confession of an accused person is to be determined is expressed in the text-books. In 3 Russell on Crimes (6th Ed.) 478, it is stated as follows: 'But a confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * * A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.' And this summary of the law is in harmony with the doctrine as expressed by other writers, although the form in which they couch its statement may be different. 1 Green. Ev. (15th Ed.) § 219; Wharton, Crim. Ev. (9th Ed.) § 631; 2 Taylor, Ev. (9th Ed.) § 872; 1 Bishop's New Crim. Proc. § 1217, par. 4."

At pages 557 and 558 of 168 U. S., pages 192, 193, of 18 Sup. Ct. {42 L. Ed. 568), the opinion reads in this way:

"In this court the general rule that the confession must be free and voluntary, that is, not produced by inducements engendering either hope or fear, is settled by the authorities referred to at the outset. * * * In this court also it has been settled that the mere fact that the confession is made to a police officer, while the accused was under arrest in or out of the prison, or was drawn out by his questions, does not necessarily render the confession involuntary, but, as one of the circumstances, such imprisonment or interrogation may be taken into account in determining whether or not the statements of the prisoner were voluntary. Hopt v. Utah, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262; Sparf v. U. S., 156 U. S. 51, 55, 15 Sup. Ct. 273, 39 L. Ed. 343. And this last rule thus by this court established is also the doctrine upheld by the state decisions."

At page 549 of 168 U. S., page 189 of 18 Sup. Ct. (42 L. Ed. 568), the court said:

"The rule is not that, in order to render a statement admissible, the proof must be adequate to establish that the particular communications contained in a statement were voluntarily made, but it must be sufficient to establish that the making of the statement was voluntary; that is to say, that from the causes which the law treats as legally sufficient to engender in the mind of the accused hope or fear in respect to the crime charged, the accused was not involuntarily impelled to make a statement, when but for the improper influences he would have remained silent."

At page 555 of 168 U. S., page 192 of 18 Sup. Ct. (42 L. Ed. 568), the court reviews the then latest decision in England, rendered by the Court for Crown Cases Reserved, in Reg. v. Thompson (1893) 2 Q. B. 12, and calls attention to the facts that the English court there

adopted "the ruling of Baron Parke in Reg. v. Warringham, 2 Den. C. C. 447n, to the effect that it was the duty of the prosecutor to satisfy the trial judge that the confession had not been obtained by improper means, and that, where it was impossible to collect from the proof whether such was the case or not, the confession ought not to be received," and that the English court then decided that, "on the broad, plain ground that it was not proved satisfactorily that the confession was free and voluntary," it ought not to have been received.

At page 565 of 168 U. S., page 195 of 18 Sup. Ct. (42 L. Ed. 568), the Supreme Court states its conclusion in these words:

"In the case before us we find that an influence was exerted, and as any doubt as to whether the confession was voluntary must be determined in favor of the accused, we cannot escape the conclusion that error was committed by the trial court in admitting the confession under the circumstances disclosed by the record."

The confessions in the case before this court were made to an inspector while the defendants were prisoners under his control. He stated to one of them that he had an absolutely good case against him, and to both that the thing for them to do was to plead guilty and to throw themselves on the mercy of the court, and the matter would probably be overlooked in the state court. Tried by the decision of the Supreme Court in Bram's Case, either of these statements was "legally sufficient to engender in the mind of the accused hope or fear in respect of the crime charged," and each of them rendered the subsequent confession involuntary and inadmissible in evidence.

The judgment below must therefore be reversed, and the case must be remanded to the District Court with instructions to grant a new trial. It is so ordered.