## GREENHILL v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. May 8, 1925.)

No. 4511.

**1. Criminal law ⊗—113—Refusal to try defendants in county of offense held within discretion of court.**

Under Judicial Code, § 40 (Comp. St. § 1022), providing that the trial of offenses punishable by death shall be held in the county where the offense was committed, where that can be done without great inconvenience, refusal to try defendants for murder in the county of the offense, on the ground that there was no United States public building in that county, and the holding of the trial in an adjoining county, *held* within the discretion of the court.

**2. Criminal law ⊗—519(3)—Confession while in custody held not involuntary.**

The facts that defendant, when he made a confession, was in custody, handcuffed, and guarded by armed officers, are not sufficient to render the confession involuntary.

**3. Criminal law ⊗—531(3) — Confession held properly admitted in evidence.**

Evidence of the circumstances under which a confession was made, *held* not such as to render it inadmissible as involuntary.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Criminal prosecution by the United States against Sam Greenhill. Judgment of conviction, and defendant brings error. Affirmed.

W. H. Mitchell, of Florence, Ala., and A. H. Carmichael, of Tuscumbia, Ala., for plaintiff in error.

Jim C. Smith, Asst. U. S. Atty., of Birmingham, Ala. (C. B. Kennamer, U. S. Atty., of Guntersville, Ala., on the brief), for the United States.

Before WALKER, BRYAN, and FOS-TER, Circuit Judges.

BRYAN, Circuit Judge. Sam Greenhill and David Dewberry were convicted of the murder of one Harry S. White, which was committed on a government reservation at Muscle Shoals, in Colbert county, Ala. The death sentence was pronounced upon Greenhill, and he alone prosecutes this writ of error. The jury qualified their verdict against Dewberry by the words "without capital punishment," and pursuant thereto that defendant was sentenced to life imprisonment. Judicial Code, § 40 (Comp. St. § 1022); Criminal Code, § 330 (Comp. St. § 10504).

The trial was had at a regular term of court held at Florence, in Lauderdale county, Ala. The District Judge denied a motion by defendants that the trial be held in the adjoining county of Colbert, in which the crime was committed, on the ground of "great inconvenience," there being no United States public building in that county, and during the trial admitted in evidence the written confessions of the defendants. The assignments of error are based upon these rulings.

Evidence was introduced by the government to the following effect: Harry S. White was a patrolman on the government reservation described in the indictment. On the morning of December 8, 1923, he mounted his horse and left plant No. 1 on his usual patrol. Some hours later his horse returned without him, and, upon search being made, his body was found in an old cistern on the reservation. A physician testified that he examined White's body and found a gunshot wound, inflicted by shot about No. 4 in size, which had entered the back part of the head from the left, and that this wound was the cause of death. On the morning of White's death, the two defendants were hunting together on the reservation. Near the cistern in which White's body was discovered, an empty shell was found in some honeysuckle vines about 15 feet away from some blood on the ground. A pistol which White had in his possession at the time of his death was returned by police officers to a witness who claimed to own it, but it was not shown that it had ever been in the possession of either of the defendants. On the evening of the day of White's death, Greenhill paid $5 on account of a debt.

The government then proceeded to prove a confession by each of the defendants. E. J. Cartier, a special agent of the United States in the employ of the Department of Justice, who caused the defendants to be arrested and held in custody at one of the plants on the government reservation, in stating the circumstances under which the confessions were made, testified as follows:

"Tuesday afternoon I carried Dave Dewberry from the jail to the plant. He was handcuffed when we carried him over to the plant. When we reached the plant, I interviewed him about the killing. I told him, in the course of our conversation, I did not want any of his lying, and at one time during this conversation I struck him in the face with my hand. Dewberry finally told about the killing, and said that Sam Greenhill did the shooting. I thereupon had Sam Greenhill brought over to the plant. I talked to both of the defendants many times about the killing, from Tuesday until the following Thursday night, during a part of which time they were handcuffed, and they were guarded day and night during said time, and after they had both agreed to tell it I put them back to back in the presence of the officers and told them I wanted their testimony to jibe. There were several guards present, all of whom were armed. One of the guards acted as clerk, and took down what these men said in long-hand. He took it down in the very language that the men used in giving the statements word for word. I then took it up to the office, and had a lady stenographer to typewrite it, and brought it back, and had them sign the typewritten statement. I made no promise at any time to them, nor any threats against them, to induce them to sign the statements, or to make any of the statements. Neither did any one else make them any promise, or threaten them in any way, in order to induce them to make the statements. The statements were voluntarily made."

Another witness, Homer Hamilton, testified that the defendants were sitting on a box at the time they made their confessions. A. Poyet, who was in charge of plant No. 2, testified as follows:

"I was present at the interview that Mr. Cartier had with the defendants when they were first arrested. They were in my office. There were no threats made. They handcuffed them and chained them to the rafters of the warehouse on the reservation. They told us a story that didn't agree. I told them they were lying, and I gave the guards instructions that whenever they told the story like it ought to be that they could bring them out of the warehouse back to my office. No; I did not threaten them with the Ku Klux; but I had instructed the guards, if

they saw any evidence of a mob, to blow the fire alarm. One night I feared a mob, and the fire alarm was sounded, and we ran the defendants through the warehouse and hid them. We did not threaten them, nor force them to make the statement that they made."

The written confession of each defendant was then offered, and, over objection and exception, admitted in evidence. That of Greenhill, in so far as it is material, is substantially as follows: On the morning of December 8, 1923, he and Dewberry went hunting on the government reservation. He had some shells loaded with No. 4 shot. After he had killed a rabbit and a partridge, and Dewberry had killed a rabbit, they observed White approaching them, and they agreed that they would not allow him to arrest them. White rode up, spoke to them, and stated that he would have to arrest them for hunting on the reservation, and told them to walk on ahead. They went up a hill along an old pathway. When they reached the top of the hill, near where there had been an old house, he (Greenhill) obtained permission from the patrolman to step aside into some bushes on the side of the road, and while there he saw the patrolman looking away at the dogs running a rabbit, and shot and killed him as he sat on his horse in the middle of the road, about 10 feet away. He then took a pocketbook, containing $30, and a pistol, off the body, and he and Dewberry carried and placed the body in an old cistern. Dewberry's confession is practically the same as that of Greenhill.

[1] Section 40 of the Judicial Code provides: "The trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience." As was held by this court in Brown v. United States, 257 F. 46, 168 C. C. A. 258, the statute just quoted "does not confer upon a defendant an absolute right to a trial in the county where the offense was committed, but only a qualified right in cases where such a trial could be had 'without great inconvenience.' The District Court is vested with discretion in making this determination." Tuscumbia is the county seat of Colbert county, in which the crime was committed, and is not more than five miles from Florence, where the trial was had. The reason given by the District Judge, that there was no public building provided for the United States District Court in Colbert county, was, under the circumstances, we think, a sound one. In our opinion it affirmatively appears that the discretion conferred by the statute upon the District Judge was not abused, but was wisely exercised.

[2] As Dewberry has not prosecuted a writ of error, we are not called upon to determine whether his confession was induced by the treatment which he received from the special agent of the Department of Justice. It goes without saying that such treatment was highly improper, but it does not appear that Greenhill knew of it, or was in any wise affected by it in making his confession. There is nothing in the manner in which Greenhill's confession was obtained which tends to show that it was unreliable, or rendered unworthy of belief: It is true that he was in custody, handcuffed, and guarded by armed officers; but these facts, taken singly or considered together, are not sufficient to render the confession involuntary. Hopt v. People of Territory of Utah, 110 U. S. 574, 4 S. Ct. 202, 28 L. Ed. 262; Sparf v. United States, 156 U. S. 51, 15 S. Ct. 273, 39 L. Ed. 343; 1 Greenleaf, § 220a.

[3] Cartier's testimony that the defendants were placed "back to back" while they were making their confessions is explained by another witness, who said they were sitting on a box. Cartier's further statement that he wanted the confessions to "jibe" was but another way of saying that he wanted them to be in accord. The fact that defendants gave their statements in the presence of each other indicates fairness of treatment, rather than the contrary, because an opportunity was thus afforded to either defendant to challenge as untrue or incorrect any statement made by the other.

It appears from Poyet's testimony that the defendants were chained to the rafters of the warehouse shortly after they were arrested, and some two days before they confessed. If this treatment is relied upon as ground for reversal, the facts with reference to it should have been more clearly brought out. It is entirely consistent with the bill of exceptions that the defendants were chained to the rafters only for the purpose of preventing their escape, and not for the purpose of intimidating them, or inducing them to confess. It further appears that the statements made by the defendants at that time were conflicting, but what was said by them was not stated or put in evidence. The effect of what Poyet said was that he would not accept their statements as true. His instructions to the guards to bring the defendants back to his office whenever they were ready to tell the truth, so far as appears, were not made in their presence or heard by them. We are not of opinion that anything

said or done by Poyet was calculated to make involuntary the confessions which were afterwards made. It is not shown that the fear of mob violence which Poyet entertained was communicated to or known by the defendants or either of them.

Taking the government's evidence as a whole, we are of opinion that the confession of Greenhill was not the result of any inducement held out by the government agents, but that he was left free to make it or not as he pleased. In Ziang Sung Wan v. United States, 266 U. S. 1, 45 S. Ct. 1, 69 L. Ed. 131, relied on by defendant, the rule is recognized that "a confession may have been given voluntarily, although it was made to police officers, while in custody, and in answer to an investigation conducted by them." There is nothing in that case to support a ruling that the confession under consideration in this case was involuntary. Neither of the defendants offered any evidence, and therefore the case stands as made by the government.

Our conclusion is that the record is free from error. The judgment is affirmed.