## DAVIS v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
May 13, 1929.

No. 5629.

Gilbert, Circuit Judge, dissenting in part.

Collier, Collier & Bernard and J. N. Helgerson, all of Portland, Ore., for appellant.

George Neuner, U. S. Atty., and Forrest E. Littlefield and J. W. McCulloch, Asst. U. S. Attys., all of Portland, Or.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The appellant was convicted of murder in the first degree upon an indictment that charged that he, an Indian within the confines of the Klamath Indian Reservation, the same being Indian country, did on. January 2, 1928, with malice aforethought, kill Lawrence Walker, an Indian. The record showed that the appellant was regularly enrolled as a Klamath Indian, and had been allotted lands within the Klamath Indian Reservation, which the government held in trust for him, and that Walker was a full-blooded Indian, but was not a member of the Klamath Tribes, and that the crime was committed at the home of Walker's mother, on lands held by her under restricted patent from the government.

The appellant assigns error, to the trial court's refusal to direct that the trial of the case be held at Medford, that being alleged to be the most convenient and accessible place to the county in which the crime was committed. There was no provision for a term of a federal court in the county in which the offense was alleged to have been committed, and, while section 101, 28 USCA, provides that a capital offense shall be tried in the county where committed, where that can be done without great inconvenience, the denial of a trial in such county is not held to be ground for reversal, unless it is accompanied by abuse of discretion on the part of the trial court, and there is no suggestion here of abuse of discretion. Greenhill v. United States (C. C. A.) 6 F.(2d) 134; Brown v. United States (C. C. A.) 257 F. 46.

The appellant challenges the jurisdiction of the trial court, and points to the evidence that the appellant is not a tribal Indian, that the Klamath Indians have not maintained tribal relations for many years, but have lived and commingled with the white race, and have no chief, and by the Act of Congress of June 2, 1924, 43 Stat. 253, have been

made full citizens of the United States, and that Walker was not a Klamath Indian, and was not known and enrolled as a member of any tribe. Section 548, 18 USCA, provides that all Indians committing certain crimes, including murder, against the person of another Indian, within the boundaries of any state of the United States, and within the limits of any Indian reservation, "shall be subject to the same laws, tried in the same courts, and in the same manner, and be subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States." There was no error in overruling appellant's objection to the jurisdiction. United States v. Celestine, 215 U. S. 278, 284, 30 S. Ct. 93, 54 L. Ed. 195; United States v. Pelican, 232 U. S. 442, 34 S. Ct. 396, 58 L. Ed. 676; Apapas v. United States, 233 U. S. 587, 590, 34 S. Ct. 704, 58 L. Ed. 1104; United States v. Ramsey, 271 U. S. 467, 46 S. Ct. 559, 70 L. Ed. 1039.

The assignment of error principally relied upon is that the court admitted in evidence the appellant's confession. The appellant had stated to several persons that he had killed Walker in self-defense and he had been taken under arrest. Preliminary to the admission of the confession, a special agent for the United States Department of Justice testified to a conversation with the appellant, on January 2, 1928, in which he told the appellant who he was, exhibiting his badge, and asked the appellant for his story; that the appellant told him of calling to see Walker at the Anna Lynch place; that he and Walker had a short talk, and went to the barn and drank some liquor, and later had a short talk concerning a fight they had had the previous day; that Walker then drew a knife, and the appellant picked up an ax and hit Walker over the head, and after he knocked him down he hit him again, and then he dragged the body into the house and laid it on the bed. At about 3 o'clock on the morning of January 3, 1928, the witness took the appellant from the jail to the morgue, where the body of the deceased lay, and talked to him and told him what had been found, but that the appellant still stuck to his story. "We then," said the witness, "brought him up before the body which lay on the table, being drained, and we showed it to him, and made him examine the body and see the wounds on the head." The evidence was that, after they had been at the morgue three-quarters of an hour, the witness asked the appellant if it were not true that he had crawled in through the window and killed Walker while

he was in bed, and the appellant said that it was true. The witness testified that he then took the appellant "out of that room," and took him to the sheriff's office, and said, "I want you to give me a complete confession on the whole thing," whereupon the appellant made a detailed statement. The witness testified that he made no promises to the appellant, and used no threats of any kind, and no force or violence.

The appellant cites Ziang Sung Wan v. United States, 266 U. S. 1, 45 S. Ct. 1, 69 L. Ed. 131. In that case a confession was obtained from the accused, who had been subjected to persistent, lengthy, and repeated interrogations at a time while he was ill, and continuously for 10 hours had been led from floor to floor to examine minutely and reexamine the scene of the alleged murder, the revolver which had been used, the blood stains and finger prints thereon, the clothes of the murdered men, the blood stains on the floor, and many other objects connected with the homicide, concerning which the accused was plied with questions by the superintendent of police and detectives. On the twelfth day of this continued torture, while weak and exhausted, he signed the confession. The Supreme Court, while holding a confession obtained by methods so shocking as those recounted in that case inadmissible against the accused, said:

"In the federal courts, the requisite of voluntariness is not satisfied by establishing merely that the confession was not induced by a promise or a threat. A confession is voluntary in law if, and only if, it was, in fact, voluntarily made. A confession may have been given voluntarily, although it was made to police officers, while in custody, and in answer to an examination conducted by them. But a confession obtained by compulsion must be excluded, whatever may have been the character of the compulsion, and whether the compulsion was applied in a judicial proceeding or otherwise." As to the facts in the case the court observed: "The undisputed facts showed that compulsion was applied."

We may take it that light upon the scope and meaning of that decision is found in the cases which were cited in the opinion. Bram v. United States, 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568, was a case in which the confession of the accused had been held inadmissible, for the reason that it was obtained by a trick and by a false statement made by the chief of police to the accused, while he was in custody, as to what had been said by another accused person, who had

also been taken into custody, whereby improper influence had been exerted upon the accused. In Hopt v. Utah, 110 U. S. 574, 4 S. Ct. 202, 28 L. Ed. 262, the court recognized the value of a confession freely and voluntarily made, and held it to be evidence of the most satisfactory character, and quoted Eyre, C. B., 1 Leach, 263, 'who said: "Such a confession * * * 'is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt.' And the court directed attention to the presumption upon which weight is given to such evidence, namely that one who is innocent will not impair his safety or prejudice his interests by an untrue statement. A presumption, which the court said, "ceases when the confession appears to have been made either in consequence of inducements of a temporal nature, held out by one in authority, touching the charge preferred, or because of a threat or promise by or in the presence of such person, which, operating upon the fears or hopes of the accused, in reference to the charge, deprives him of that freedom of will or self-control essential to make his confession voluntary within the meaning of the law."

In Sparf and Hansen v. United States, 156 U. S. 51, 55, 15 S. Ct. 273, 275 (39 L. Ed. 343), the court rejected the contention that there could be no voluntary confession while the accused is confined and in irons under an accusation of having committed a capital offense, and said: "Confinement or imprisonment is not in itself sufficient to justify the exclusion of a confession, if it appears to have been voluntary, and was not obtained by putting the prisoner in fear or by promises." In Pierce v. United States, 160 U. S. 355, 16 S. Ct. 321, 40 L. Ed. 454, it was held that statements made by the accused while they were under arrest and handcuffed were not to be excluded, provided that such confessions were not extorted by inducements or threats. In Wilson v. United States, 162 U. S. 613, 623, 16 S. Ct. 895, 899 (40 L. Ed. 1090) the court held that the fact that the accused was in custody and manacled does not necessarily render his statement involuntary, nor, said the court, "is that necessarily the effect of popular excitement shortly preceding." Hardy v. United States, 186 U. S. 224, 229, 22 S. Ct. 889, 46 L. Ed. 1137, Powers v. United States, 223 U. S. 303, 315, 32 S. Ct. 281, 56 L. Ed. 448, and Bilokumsky v. Tod, 263 U. S. 157, 44 S. Ct. 54, 68 L. Ed. 221, also cited in the opinion, are in harmony with the rulings in the preceding cases and add nothing of moment thereto.

In addition to the foregoing, the appellant cites the following cases: Purpura v. United States (C. C. A.) 262 F. 473, a case in which it was held that a confession obtained from the accused, who had been taken in charge by five inspectors and held 24 hours incommunicado, and had been told by the officers that they believed him guilty and had evidence which made it look bad for him, was held inadmissible, for the reason that it was not free and voluntary; Sorenson v. United States (C. C. A.) 143 F. 820, 824, a case in which the confession had been obtained by an inspector on his stating to the accused that he had an absolutely good case against him, and that the thing for him to do was to plead guilty and throw himself on the mercy of the court, and that another offense against the state laws would then probably be overlooked; United States v. Kallas (D. C.) 272 F. 743, where the court was of the opinion that a confession obtained by an inquisition to which the accused was subjected while held in jail at the mercy of his jailer was inadmissible without first showing that it was freely and voluntarily made, after the accused was fully advised of his rights and warned of his danger.

The case principally relied upon is Perrygo v. United States, 55 App. D. C. 80, 2 F.(2d) 181. In that case the confession was made by a boy 17 years of age, of low mentality, who had persisted in a denial of his guilt, and who was subjected to interrogatories for a period of three hours, while surrounded by four and at times five police officers, and who before he made his confession complained that his head ached and that he felt sick. It was held that the confession was obtained by compulsion and must be excluded.

The case at bar differs in substantial features from any of the cases above referred to, in that here no third degree methods were used, no threats were made, no violence was employed, no inducements were offered, and no suggestion was made that it would be to the advantage of the accused to tell the truth. If there were influences which were effective in inducing him to make the confession, they were but the influences exerted by the time, the place, and the surroundings, the presence of the dead man, the visible wounds which caused his death, and the detention of the appellant at the morgue for a period of three-quarters of an hour in the early morning hours, before day. Were those circumstances such as to render the confession subject to exclusion? The presumption recognized in Hopt v. Utah that one who is innocent will not impair his safety or prejudice

his interests by an untrue statement should operate to render the appellant's confession admissible, unless the circumstances were such as to deprive him of his freedom of will or self-control, and constrain him to make a false statement. The fundamental test, says Wigmore is: "Was the inducement of a nature calculated under the circumstances to induce a confession, irrespective of its truth or falsity?" That test seems to be universally recognized as the only rational and correct one. Said Littledale, J.: "The object of the rule relating to the exclusion of confessions is to exclude all confessions which may have been procured by the prisoner being led to suppose that it will be better for him to admit himself to be guilty of an offense which he really never committed." Rex v. Court, 7 C. & P. 486. Said Coleridge, J., in Rex v. Thomas, 7 C. & P. 346: "The only proper question is whether the inducement held out to the prisoner was calculated to make his confession an untrue one." In United States v. Stone (C. C.) 8 F. 232, 256, Judge Hammond said: "The real question is whether there has been any threat or promise of such a nature that the prisoner would be likely to tell an untruth from fear of the threat or hope of profit from the promise."

I am unable to discover in the circumstances under which the appellant's confession was made any influence which was calculated to induce him to accuse himself falsely of the commission of the crime, or to think that the confession would relieve him of any present threat or fear, or would carry with it the suggestion of any benefit to him. The objection to the admission of the confession was that the "testimony clearly shows coercion." The trial court was unable to find coercion, and I am not convinced that there was error in that conclusion.

I think that the judgment should be affirmed.

RUDKIN and DIETRICH, Circuit Judges (concurring in part). ▆▆ We concur in the foregoing opinion of Judge GILBERT, except as to the competency or admissibility of the confession made by the appellant at the morgue, or of any repetition of that confession. It appears from the testimony that the appellant admitted or confessed to different persons at different times during the day of the homicide that he had killed the deceased by striking him on the head with an ax, but these admissions or confessions were invariably coupled with a claim that the deceased had assaulted the appellant with a knife, and that the appel-

lant had struck the fatal blow in self-defense. Among others to whom such a confession was made was a special agent of the Department of Justice. This agent frankly admitted that the appellant stuck to this story consistently, and that he could not break him down until he took him to the morgue at about 3 o'clock in the morning, and kept him there in the presence of the dead body for nearly an hour. All of the authorities agree that a confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. Bram v. United States, 168 U. S. 532, 542, 18 S. Ct. 183, 42 L. Ed. 568.

In this case there were no promises and no threats, but we are constrained to hold that there was an exertion of improper influence. If the appellant had been taken to the scene of the crime before the wounded Indian had been removed, and before any change had taken place in the surroundings there, we can understand how he might have confessed, seeing the apparent futility of attempting to convince any one that he had struck the fatal blow in self-defense and then dragged the body inside the house and placed it on the bed, wrapped as it was when last seen a few hours before the homicide. But there was nothing at the morgue to contradict his story, and no reason for changing it unless it was the gruesome surroundings and the presence of the dead body. Indeed, we are at a loss to understand why the prisoner was taken to the morgue at all at that unseemly hour of the night, unless the agent knew something of the Indian character, and believed that he would break down and confess in the presence of the dead body of his victim. But, whatever prompted the appellant to confess, whether it was superstition or fear, or something akin thereto, we are not convinced that the confession was free and voluntary, as those terms have been uniformly defined by the courts. Indeed, it seems to us that the conduct of the special agent in this case was far more subject to criticism and condemnation than was the conduct of the officer to whom the confession was made in the Bram Case. Nothing can be added to the thorough discussion of the subject of confessions to be there found. After a somewhat extended investigation of the subject, we have found but a single instance where an officer took a prisoner to the morgue to register the reaction, and in that case the conduct of the officer was well described by an able

judge as "the theatrical, dime-novel folly of an overzealous officer." Miller v. Territory of Washington, 3 Wash. T. 554–580, 19 P. 50.

For error in the admission of testimony, the judgment is reversed, and the case is remanded for a new trial.