**UNITED STATES v. LONARDO.**

No. 202.

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1933.

George W. Herz, of Brooklyn, N. Y., for appellant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Emanuel Bublick, and William T. Cowin, Asst. U. S. Attys., all of Brooklyn, N. Y., of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Lonardo was indicted with three others upon nine counts; the first for conspiracy to possess and pass counterfeit notes; the second, for passing one such note; the other seven for possessing seven other notes. The jury acquitted him upon the first count and convicted him upon the second to seventh inclusive; the eighth and ninth were dismissed by the judge. One of the co-defendants, Hatlen, pleaded guilty; another, Ward, was acquitted; the third, Gates, was convicted on all but the passing count. Lonardo appealed. The evidence, disregarding for the moment its competency, would have justified the jury in finding that Lonardo brought and gave counterfeit notes to Hatlen and Gates, who roomed together, and that Hatlen gave one of them to Ward to pass, which he did. The only question which we find it necessary to discuss is the competency of the evidence. To an understanding of this it is necessary to state the manner in which the proof was developed.

Upon their arrest all four of the defendants made certain declarations to the officers. Hatlen, Lonardo and Gates declared that Lonardo brought the bills to Hatlen; and the officers found a number of them in the clothing of Hatlen and Gates in their rooms, and concealed on the premises. The only evidence against Lonardo was his written confession, the statements of Hatlen and Gates after their arrest, and certain testimony of Hatlen on the stand, of which we shall speak later. The judge first let in Lonardo's confession, but later excluded it; it is not therefore to be taken as evidence against him on this trial, whether competent or not. The statements of Hatlen and Gates were admitted against him over his objection; the prosecution's theory being that the concerted purpose of the confederates had not yet been completely fulfilled, and that the declarations of one were admissible against the rest until it was. We need not pause to consider whether in fact the common purpose had ended, because it would make no difference if it had not. Declarations of a confederate made after his arrest will not, except in most unusual cases, be in furtherance of the common plan; we need refer only to our discussion of the point in Van Riper v. U. S., 13 F.(2d) 961, 967. It is perhaps possible to imagine instances in which they may be, but here they clearly were not; Hatlen and Gates were no longer engaged in passing the notes. It is quite true that when several confederates are tried together, it is small protection to the

rest, if the declaration of one is admitted with an admonition that it shall be used only against the declarant. U. S. v. Nash, 54 F. (2d) 1006 (C. C. A. 2). But the situation becomes real when the question is of the sufficiency of the proof, because then incompetent evidence cannot be counted at all. In the case at bar there was nothing but these declarations and the testimony of Hatlen on the stand, to which we now come.

Though Hatlen had confessed and pleaded guilty, when called he refused to implicate Lonardo. The prosecution was thus faced with a witness who had undoubtedly told the truth before he was sworn, and who then recanted. The judge allowed great latitude in the use of Hatlen's earlier statement, so that in effect the whole of it got before the jury. As contradiction of his testimony, given at the trial as a surprise, the earlier statement would indeed have been competent. Putnam v. U. S., 162 U. S. 689, 16 S. Ct. 923, 40 L. Ed. 1118. But it did not for that reason supply the place of his oath, even if it really came as a surprise, which is somewhat doubtful; it was competent only to break the force of what he said, and it left the case without positive testimony. However, by its use the prosecution finally did extract from Hatlen testimony, which taken alone would support the case. This was done under the guise of refreshing his recollection, and the statement was so close to the event (only after the lapse of a few days), as to be proper even under the doctrine that writings must be nearly contemporaneous, to be so used. Maxwell v. Wilkinson, 113 U. S. 656, 5 S. Ct. 691, 28 L. Ed. 1037. The use to be made of them to refresh a witness's recollection rests largely in discretion, and perhaps that discretion was not here abused. We need not say, for the result was here too nebulous to support a verdict. Hatlen first denied that Lonardo had given him and Gates the notes; later he was forced to say that his statement to the contrary was true; finally he went back to his first denial. Strictly, the jury might conclude that he spoke truly when on the stand he adopted his earlier statement, and that when he repudiated it, he did not; but his testimony taken as a whole was very fragile, if unsupported, and supported it was not except by the incompetent declarations of Gates and Hatlen himself. It is true that the jury would probably have convicted Lonardo on Hatlen's testimony alone; but the formal error of allowing the declarations to be used against him became important when in summing up the prosecution's case, the judge expressly told the jury that they were the only evidence against him. That emphasis was almost certainly of force with them, and, taken with the equivocal character of Hatlen's testimony, made something which we cannot disregard. It is a hard rule anyway which allows declarations to be used at all in a case where the declarant is tried along with others; hard, that is, if hearsay should not be accepted as competent. While we might disregard the failure to give the ritualistic admonition when there was other strong proof, and when the charge did not press home the error, we are not willing to go so far as things were. We think that the case must be retried.

It becomes important therefore for the parties to know whether we regard Lonardo's confession as competent, and each side asks us to declare ourselves. It was procured by an assistant district attorney, while Lonardo was under arrest and after Hatlen and Gates had made their statements, though not in his presence. At first he denied his guilt and persisted in that denial. The district attorney told him that he was a decent seeming young man to be mixed up in such an affair, and asked him why he did not tell the truth; why he persisted in being so stubborn. He was told that Hatlen had already implicated him, and that it was foolish to continue to protest his innocence; that courts in imposing sentence took into consideration the fact that the accused had been willing to plead guilty. At the end of five or ten minutes Lonardo said that if Hatlen had told the story he had better tell the truth himself. He was then formally admonished that he need not speak, but that if he did what he said would be used against him.

When the accused in a criminal cause was not allowed to take the stand, there was good reason to scrutinize jealously confessions on the score of their untrustworthiness. But today it must be confessed that this consideration has become an anachronism; under modern notions all such questions are to be resolved by the jury, and the accused can deny or explain his confession if he chooses. Moreover, the exclusion is now particularly anomalous, since an accomplice, who is under as great provocation to falsify, may testify freely. There would seem to be no longer any rational justification for the doctrine except that evidence procured by improper means ought not to be received at all; and there would be an analogy for this, at least to-day, in the treatment of evidence procured by unlawful search. But courts have always gone on the theory that the circumstances in

which the confession is made must be such as prima facie to insure its verity, and we must assume that that still remains the law, though in many instances it has been pushed to extreme unreality. To take the case at bar as an instance; no one can seriously suppose that Lonardo, though innocent, was persuaded to acknowledge his guilt because he hoped that the court would use him more gently. True, an innocent man might be faced with so strong a case against him that, if he were indifferent to the stigma of conviction as some men are, he would confess falsely on the hope that he would be less severely punished. But those must be very rare cases, and, unless we are to clutch at straws, we cannot reconcile much of the law with the theory which it professes to follow.

The authorities are so many and so conflicting that we are of necessity confined to those in the federal courts, which alone are authoritative for us. The leading case is Bram v. U. S., 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568, and on it the defendant especially relies. But the circumstances there were very different; Bram had been put in irons while on the ship, was taken into immediate custody when he landed, and at the time of his answers, had been, or was being, completely stripped by the Canadian officers, a particular which the court thought of enough importance to mention in italics (page 561 of 168 U. S., 18 S. Ct. 183, 194). Despite these facts the confession was held incompetent only by a vote of five to three. The discussion of White, J., goes far into the decisions, and it must be admitted that in England, at least in the last century, the inducement here used would have thrown out the confession. In spite of the court's treatment of those decisions as a safe guide (page 557 of 168 U. S., 18 S. Ct. 183, 192), we do not believe that it meant to commit itself to the doctrine that the mere hope of a lighter punishment would exclude a confession. Sorenson v. U. S., 143 F. 820 (C. C. A. 8), decided nine years after Bram v. U. S., unquestionably went upon that theory; the hope of being relieved of a state prosecution alone vitiated a confession. It is the strongest case that we have found for the defendant, but we are not disposed to follow it. In Perrygo v. U. S., 55 App. D. C. 80, 2 F.(2d) 181, a boy of seventeen of low mental ability had been examined by four or five policemen for an hour and a half; in Purpura v. U. S., 262 F. 473 (C. C. A. 4), the accused had been held incommunicado for twenty-four hours; in Davis v. U. S., 32 F.(2d) 860 (C. C. A. 9), he was brought to a morgue where

his putative victim lay and was there examined. None of these is at all comparable to the case at bar. Murphy v. U. S., 285 F. 801 (C. C. A. 7), and Greenhill v. U. S., 6 F.(2d) 134 (C. C. A. 5), stand for a less strict interpretation, though they too were not in point on the facts. Our conclusion is that we are free to decide that the inducement of a possibly lighter punishment is not ordinarily enough to impugn the verity of a confession, and that there were here no added circumstances to make a difference.

Judgment reversed.