## HARDY v. UNITED STATES.

ERROR TO THE DISTRICT COURT FOR THE DISTRICT OF ALASKA.

No. 502.  Submitted April 28, 1902.—Decided June 2, 1902.

The action of a trial court, upon an application for a continuance, is purely a matter of discretion, and not subject to review by this court, unless it be clearly shown that such discretion has been abused; and in this case it could not be said that an abuse of discretion was clearly shown.

There is no impropriety in permitting the government to search the mind of a juror, to ascertain if his views on circumstantial evidence were such as to preclude him from finding a verdict of guilty, with the extremest penalty which the law allows.

Voluntary statements, made by a defendant before and after a preliminary examination, are admissible in evidence when made to the magistrate who conducted the preliminary examination.

THE case is stated in the opinion of the court.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

On September 10, 1901, in the District Court for the District of Alaska, Second Division, Fred Hardy, plaintiff in error, was found guilty of the crime of murder and sentenced to be hanged.  Thereupon he sued out this writ of error.

In the record appear thirty-two assignments of error, but in the brief filed by his counsel only three are pressed upon our attention.  First, it is claimed that the court erred in refusing the defendant a continuance.  " That the action of the trial court upon an application for a continuance is purely a matter of discretion, and not subject to review by this court, unless it be clearly shown that such discretion has been abused, is settled by too many authorities to be now open to question."  *Isaacs* v. *United States,* 159 U. S. 487, 489, and authorities there cited. See also *Goldsby* v. *United States,* 160 U. S. 70.

This proposition of law is not disputed but it is contended

that abuse of discretion is shown. The pertinent facts are as follows: The indictment charged the murder of Con Sullivan on June 7, 1901. The killing took place on Unimack Island. The defendant filed in support of his motion his affidavit stating that he had been in custody since July 27; that at the time of his arrest he had $685 upon his person, which was taken from him by the arresting officer; that one Captain Mackintosh, and one John Johnson, captain and mate respectively of the schooner Arago, upon which affiant came as a sailor from San Francisco to Unimack Island, would testify that he remained on that vessel continuously from the time it left San Francisco until June 11; that the schooner, with the captain and mate on board, left Alaska prior to the finding of the indictment against him, but that he believed and had been informed that the vessel would probably return within a reasonable time, and if not that the depositions of the captain and mate could be obtained in San Francisco, the place of their residence. The affidavit further stated that two witnesses, whose names were unknown, who were both in the employ of the government on a boat named the Pathfinder, plying in the waters of the Northern Pacific Ocean and the Behring Sea, and which frequently called at Dutch Harbor—within one mile of the place where court was being held—would testify that they knew affiant in San Francisco from about March 26 to April 15, and then saw him in possession of a large amount of money, an amount in excess of $1500, a part of which was the money taken from him when arrested. The affidavit also stated that one Major Whitney, a paymaster of the United States Army, at San Francisco, would testify that on or about March 28 affiant, on his return from the Philippine Islands as a soldier in the United States Army, was mustered out of the service at San Francisco; that said Whitney at that time paid affiant $1875; that the deposition of said Whitney could be obtained, as he was permanently stationed at San Francisco. By these witnesses defendant sought to show that he was on the schooner at the time the murder was charged to have been committed, and also to explain the possession of the money found on his person. But the date named in an indictment for the commission of the

crime of murder is not an essential averment. Proof that the crime was committed days before or days after the date named is no variance. Again, accounting satisfactorily for the money found on his person made no defence. It is not stated in the affidavit that the deceased had money in his possession. There is nothing in the indictment to suggest that he had, and nothing had at that time been disclosed to indicate that the fact that the defendant was in possession of so much money, had any significance in connection with the charge. So that upon this presentation alone it could not be said that an abuse of discretion was clearly shown.

But, further, the government offered the affidavits of several parties, which were received without objection, three of whom testified that they had been soldiers in the United States army, doing service in the Philippine Islands, were convicted of some military offence, and sentenced to imprisonment at Alcatraz Island military prison, San Francisco; that when they arrived at the prison, in the fall of 1900, the defendant Hardy was there as a military prisoner; that he was discharged therefrom the latter part of February or the first of March following, and one of them added that the defendant said that he had been sentenced for a term of five years and a forfeiture of all pay and allowances. Another witness, George Aston, testified that he came with the defendant from San Francisco on the schooner Arago; that affiant left the schooner on June 2, and that on June 20 he met the defendant Hardy, who told him that he had left the schooner three or four days after affiant; also that Hardy showed him a roll of paper money which he said was about $1200, and added: "You know this is more money than I had when I was on board the Arago." Another witness testified that the defendant told him that he left the schooner the day after the witness Aston. Another, that Hardy made a statement to him, which was afterward reduced to writing and signed by Hardy, that he left the schooner Arago about June 9, but could not tell the exact date. Some of these witnesses also testified to the defendant's being in possession of a gold watch and other articles, which he did not have when on the Arago, and which were afterward shown to have belonged to the de-

ceased, and also to Hardy's contradictory statements as to how he obtained possession of those articles, statements which in themselves were, to say the least, singular, and tended to create strong doubts as to the truthfulness of his affidavit.

Under these circumstances it seems to us clear that the court did not abuse its discretion in refusing a continuance. It is true the trial was held in a remote part of the nation, and where facilities for securing the attendance of witnesses were not as great as in more thickly settled portions; but it is also true that many of the witnesses for the government were engaged in prospecting, men without settled abodes, and whose attendance at subsequent terms it might have been difficult to secure, and it must have been perfectly obvious to defendant and his counsel that the longer he could postpone the trial the greater the probability of the absence of witnesses against him. It was the right of the court to consider all these matters, and when it appeared clearly from the testimony that some of his statements were false the court might well have concluded that no reliance was to be placed on the others.

The second assignment of error presented by counsel is that the court erred in permitting the district attorney to propound to juror Hayden the following question: " Q. Have you any such conscientious scruples or opinions as would prevent or preclude you from rendering a verdict of guilty, in a case where the penalty prescribed by law is death, upon what is known as circumstantial evidence?" It is insisted that the district attorney should have been compelled to modify the question by striking out the words " where the penalty prescribed by law is death" and insert " where the penalty prescribed by law may be death," and this because of a provision in the statute which permits a jury finding a party guilty of murder in the first degree to add " without capital punishment." We see no objection to the question. The defendant was not prevented from asking the question in the qualified form which is suggested, nor was any question propounded by him ruled out. There was no impropriety in permitting the government to search the mind of the juror to ascertain if his views on circumstantial

evidence were such as to preclude him from finding a verdict of guilty with the extremest penalty which the law allows.

Finally, it is insisted that the court erred in permitting the government to introduce in evidence a statement made by the defendant to one R. H. Whipple, United States commissioner, before whom the preliminary examination was had—a statement reduced to writing and signed by the defendant. Sections 307 to 311 inclusive of chap. 429, (30 Stat. 1319,) are relied upon to sustain this assignment of error. Those sections provide that on a preliminary examination, after the government's witnesses have been examined, the magistrate must inform the defendant that it is his right to make a statement in relation to the charge against him, that the statement is designed to enable him, if he sees fit, to answer the charge and explain the facts alleged against him, that he is at liberty to waive making a statement, and that such waiver cannot be used against him on the trial; they further provide that if he does waive his right to make a statement a memorandum thereof shall be made by the magistrate, but the fact of the waiver cannot be used at the trial; that if he chooses to make a statement the magistrate must take it in writing, propounding only certain specified questions; that his answer to each of the questions must be read as taken down, and he given liberty to make any corrections that he desires, and that such statement, so reduced to writing, must be authenticated in the following form. It must set forth that the defendant was informed of his rights in respect to making or waiving a statement; it need not contain the questions but must contain the answers, with the corrections or additions made by the defendant, it may be signed by him, but if he refuses to sign his reason therefor must be stated, as he gives it; and the whole must be signed and certified by the magistrate. The magistrate testified that before the preliminary examination was commenced the defendant voluntarily and without any suggestion insisted upon making a statement. Whereupon he, the magistrate, informed him that he was entitled to counsel, that he was under no obligations and need not make any statement, but that if he did it would be used against him on the trial, and also that if he waited an oppor-

tunity would be given to him to make a statement at the proper time; that notwithstanding this he insisted on making a statement, and it was then reduced to writing by the clerk of the court and signed and sworn to by the defendant; that after the examination had commenced and the testimony of witnesses for the government had been taken the statutory questions were put to him, and he was advised that he could then make a statement if he desired, but he refused to say anything. Upon this showing the statement was admitted in evidence. The magistrate also testified that after the examination was over and the defendant had been placed in jail the latter sent word that he wanted to talk with him about the case, and in an interview stated orally that his former statement was untrue, and volunteered a different account of the transactions. There was no contradiction of the testimony as to the circumstances under which these two statements—one written and the other oral—were made, except that in reference to the last statement defendant, when on the witness stand, testified that the magistrate "came up to the jail and ordered me to return to his office for the purpose of securing some information to arrest some other fellows, or get some points of me of other parties." From this testimony it clearly appears that the statements were not made pending the examination or under the provisions of the statute, but voluntarily one before and the other after the examination; that the provision of the statute as to giving him notice pending the examination was complied with, and that at that time he declined to make any statement. So the question is whether voluntary statements made by a defendant before and after a preliminary examination are inadmissible in evidence because made to the magistrate who in fact conducted the preliminary examination. We know of no rule of evidence which excludes such testimony. Of course, statements which are obtained by coercion or threat or promise will be subject to objection. *Bram* v. *United States*, 168 U. S. 532. But so far from anything of that kind appearing the defendant was cautioned that he was under no obligations to make a statement; that it would be used against him if he made one, and that there was a proper time for him to make one if he so de-

sired.   Without even a suggestion, he insisted on making, prior
to the examination, a statement which was reduced to writing
and by him signed and sworn to, and after the examination was
over and he had been placed in jail, he had an interview with
the magistrate and volunteered a further statement.   Affirma-
tively and fully it appears that all that he said in the matter
was said voluntarily, without any inducement or influence of
any kind being brought to bear upon him.   Indeed, it is not
claimed by counsel that there was any improper influence, his
contention being only that the provisions of the statute with
respect to a statement pending an examination were not com-
plied with in respect to these statements.   The statements were
properly admitted in evidence.   These are the only matters
called to our attention.   No errors appear in them, nor do we
perceive any plain error otherwise in the record.   The proof
of defendant's guilt is clear and satisfactory, and the judgment
is

*Affirmed.*