## ITOW et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 10, 1915.)

No. 2515.

1. CRIMINAL LAW ⬅594—CONTINUANCE—DISCRETION—ABUSE.

Defendants moved for a continuance of a criminal trial until witnesses could arrive in Alaska from the United States. The court ordered the jury to be impaneled pending their arrival, and refused to continue the trial upon learning that the witnesses had missed their steamer. After the jury was impaneled, counsel for the defense declined to make an opening statement because of his lack of opportunity to talk with such witnesses, and asked to reserve that privilege until he had that opportunity. Continuances were thereafter granted until the arrival of such witnesses,

---

and when the trial was resumed after their arrival counsel made no opening statement. *Held*, that the court did not abuse its discretion in the matter of continuance, especially as counsel had the opportunity to obtain the witnesses' version of the facts, and to make an opening statement, and therefore it could not be seen that defendants were prejudiced.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1321, 1322, 1332; Dec. Dig. ☞594.]

2. CRIMINAL LAW ☞586—CONTINUANCES—DISCRETION.

An application for the postponement of a trial is addressed to the sound discretion of the trial court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1311; Dec. Dig. ☞586.]

3. CRIMINAL LAW ☞1151 — APPEAL — MATTERS REVIEWABLE — DENIAL OF CONTINUANCE.

A ruling on an application for the postponement of a trial is not reviewable, unless it is clearly shown to have been a gross abuse of discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3045–3049; Dec. Dig. ☞1151.]

4. CRIMINAL LAW ☞855—CONDUCT OF JURY—READING NEWSPAPER ARTICLES.

On a criminal trial, defendants' counsel consented to the separation of the jury, and the court instructed them not to talk to any person or read anything regarding the case. On a motion to discharge the jury and enter a mistrial, on the ground that they must have read a newspaper article relative to the case, the court examined the jury and became satisfied that none of them had seen or heard anything about the article. *Held*, that the denial of the motion was not error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2048–2053; Dec. Dig. ☞855.]

5. CRIMINAL LAW ☞1054—APPEAL—RESERVATION OF GROUNDS OF REVIEW.

An assignment of error complaining of the admission of evidence over objection might well be overruled, where no exception was taken to the ruling on the objection.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2662–2664; Dec. Dig. ☞1054.]

6. WITNESSES ☞203—PRIVILEGED COMMUNICATIONS.

A statement by a person accused of crime to the district attorney concerning the facts and circumstances attending the death of deceased was not inadmissible on his trial for the crime as a privileged communication.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 758; Dec. Dig. ☞203.]

7. CRIMINAL LAW ☞422—EVIDENCE—ADMISSIONS OF CODEFENDANT.

Where two defendants charged with homicide were tried jointly, a statement made by one of them was admissible against him, but not against his codefendant, unless made in his presence and assented to by him, either actually or impliedly.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 984–988; Dec. Dig. ☞422.]

8. CRIMINAL LAW ☞673—RECEPTION OF EVIDENCE—LIMITING EVIDENCE ADMISSIBLE AGAINST ONE DEFENDANT.

Where the statement of one defendant is admitted as evidence against him, but not against his codefendant, the court should instruct the jury to so regard it; and if the codefendant wishes to be relieved from the influence of such evidence, he should ask for an instruction limiting the effect thereof.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1597, 1872–1876; Dec. Dig. ☞673.]

9. HOMICIDE ⬤⟶300—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

On the trial of I. and F. for homicide, the evidence for the government tended to show that I. deliberately planned the murder of deceased, and stabbed him with a sword while F. was holding him down. The evidence for defendants tended to show that deceased, F., and a third person were together in a bunkhouse; that deceased assaulted the others with his fists; that I., hearing the commotion, took his sword and went to protect the assaulted men; that deceased was about to strike him, and he attempted to strike deceased with the sword in its scabbard; and that deceased seized the scabbard, knocked I. down, fell on top of him, and in so doing fell upon the point of the sword. *Held*, that in either view of the testimony there was no occasion for an instruction as to homicide committed in self-defense, or in the prevention of a felonious act, since, if deceased committed any offense, it was an assault and battery with his fists, and not a felony.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 614, 616–620, 622–630; Dec. Dig. ⬤⟶300.]

10. HOMICIDE ⬤⟶298—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

An instruction to acquit if there was a riot in progress, or if a breach of the peace was taking place, and I. was making a lawful attempt to suppress the riot or preserve the peace, was inapplicable to the evidence, and properly refused; there being no riot, even on defendant's theory.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 612; Dec. Dig. ⬤⟶298.]

In Error to the District Court of the United States, for Division No. 1 of the District of Alaska; Overfield, Judge.

O. Itow and another were convicted of murder and manslaughter, respectively, and they bring error. Affirmed.

J. H. Cobb, of Juneau, Alaska, for plaintiffs in error.

Jno. J. Reagan, U. S. Atty., of Nome, Alaska, and John W. Preston, and M. A. Thomas, Asst. U. S. Attys., both of San Francisco, Cal., for the United States.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. [1-3] The plaintiffs in error were indicted for the murder of Frank Dunn. Itow was convicted of murder in the first degree, and Fushimi was convicted of manslaughter. Error is assigned to the refusal of the trial court to grant a continuance for which application was made by the defendants' counsel, on the ground that necessary witnesses subpœnaed in Seattle and Portland had not arrived at the place of trial; and it is contended that by the denial of the application the defendants were deprived of a substantial right, the right of affording their counsel opportunity to examine these witnesses before the trial, and to acquire information from which he could make an opening statement of the defendants' case to the jury, the fact being that on account of those circumstances no opening statement was made. The indictment was found December 13, 1912. On December 20th the defendants applied for process to compel the attendance of witnesses alleged to be in Seattle and Portland. The case was set for trial on January 2, 1913. Continuance was then requested, and it was stated that the defendants' witnesses

had started from Seattle and were on their way. The court ruled that the jury should be impaneled pending their arrival. Later the defendants' counsel stated that the witnesses had missed their steamer, but would probably come on the next steamer. The court again refused to continue the trial. On the following day, after the jury were impaneled, counsel for the defense declined to make an opening statement to the jury, for the reason that he had had no opportunity to talk to the absent witnesses, and he asked that he might reserve that privilege until he should have the opportunity to see them. Subsequently two continuances, amounting in all to four days, were granted, awaiting the arrival of the witnesses. After their arrival, the trial of the case went on, and counsel for the defendant made no opening statement, nor did he request permission to make one. An application for the postponement of a trial is addressed to the sound discretion of the court, and a ruling thereon is not subject to review by an appellate court, unless it is clearly shown to have been a gross abuse of discretion. Hardy v. United States, 186 U. S. 224, 22 Sup. Ct. 889, 46 L. Ed. 1137. The facts in the record here show no abuse of discretion, and it is not seen that the defendants could have suffered prejudice from the rulings of the court. The absent witnesses arrived in time. The defendants' counsel had the opportunity to obtain their version of the facts, and to make an opening statement to the jury had he so desired.

[4] We find no error in the refusal of the court to discharge the jury and enter a mistrial upon the motion of the defendants, on the ground that the jury, having been permitted to separate on each adjournment or recess of the court, must have seen and read a certain article published in a newspaper at Juneau, entitled "Japanese are Accused of Many Crimes," in which reference was made to the case then pending in court. Counsel for defendants had consented to the separation of the jury. The court had instructed the jury not to talk to any person about the case, nor to read anything in regard to the case. When the motion was made to discharge the jury, the court, on examining the jury, became satisfied that none of the jurors had seen or heard anything said about the article in the newspaper.

[5-8] It is assigned as error that the court admitted in evidence a certain statement made by Fushimi to the district attorney, prior to the trial, concerning the facts and circumstances attending the death of Frank Dunn. It is said that this was error, for the reason that it was the admission of a statement, made after the alleged crime, by one of the two persons indicted for the commission of the offense, which, not having been made in the other's presence, was not competent evidence against him. The statement was offered as part of the government's evidence. It was objected to on behalf of Itow on the ground that the statement made by his codefendant was not competent evidence against him. It was objected to on behalf of Fushimi on the ground that it was a privileged communication. No exception was taken to the ruling of the court upon the objections. That fact of itself is sufficient to dispose of the assignment of error. We are disposed, however, in a case of this kind, to consider the merits of the objections, and inquire whether the defendants were prejudiced by the

ruling. The objection that the testimony was a privileged communication is untenable, and it is not presented in this court.

As to the other objection, the record shows that the statement was offered only as evidence against Fushimi, and that the district attorney so stated at the time. Fushimi was subsequently called as a witness for the defendants, and testified as to the matters referred to in the statement. Where two defendants charged with a crime are tried jointly, a statement made by one of them is admissible in evidence against him, but not against his codefendant unless made in his presence and assented to by him either actually or impliedly. Sparf & Hansen v. United States, 156 U. S. 51, 58, 715, 15 Sup. Ct. 273, 39 L. Ed. 343; Alsabrooks v. State, 52 Ala. 24; Johnson v. State, 70 Ga. 725; Brandt v. Commonwealth, 94 Pa. 290; State v. Cram, 67 Vt. 650, 32 Atl. 502; Commonwealth v. Bishop, 165 Mass. 148, 42 N. E. 560. In such a case it is held that the court should instruct the jury to regard the statement as evidence against the defendant who made it, and not against his codefendant, and it has been held that, if the other wishes to be relieved from the influence of such evidence, he should ask for an instruction limiting the effect thereof. Blackman v. State, 36 Ala. 295. In this case there was no request for such an instruction. We think there was no error in the admission of the statement for the purpose for which it was offered.

[9, 10] Error is assigned to the refusal of the court to instruct the jury that homicide is justifiable, if committed to prevent the commission of a felony upon the person of the slayer, or upon his servant, or in the lawful attempt to suppress a riot, or preserve the peace, and that, if they found that the deceased was attempting to commit a felony upon the persons of Nakayama and Fushimi, and that Itow was the foreman in charge of Nakayama and Fushimi, and that in the attempt on the part of Itow to prevent the commission of such felony the deceased was killed, or if the jury had reasonable doubt as to whether the deceased did not lose his life in that way, they must acquit; and that it would also be their duty to acquit if they believed that at the time Itow reached the scene of the fatality there was a riot in progress, or a breach of the peace was taking place, and Itow was making a lawful attempt to suppress the riot or preserve the peace. These requested instructions were properly refused, for the reason that there was nothing in the evidence to which they were applicable.

The theory of the prosecution, as sustained by the witnesses for the government, was that Itow deliberately planned the murder of Dunn, and stabbed him with a sword while Fushimi was holding him down. The evidence of the defendants tended to show that a controversy arose between Dunn and Fushimi and Nakayama, in which Dunn assaulted the others with his fists, that Itow hearing the commotion took his sword and went to protect his men, and stop the fight, that Dunn was about to strike him, and that he attempted to strike Dunn with the sword in its scabbard; that Dunn seized the scabbard, struck Itow with his other hand, knocked him down, and leaped or fell on top of him, and in so doing fell upon the point of the sword and was mortally wounded. In either view of the conflicting testimony, there was no occasion for an instruction on the subject of homicide com-

mitted in self-defense, or in the prevention of a felonious act. If Dunn was killed in the manner testified to by the government's witnesses, it was murder. If he was killed in the manner testified to by the defendants, it was an accident.

Again, the requested instruction erroneously assumed that Dunn was slain while in the commission of a felony. There is no evidence for that assumption. If he committed any offense, it was an assault and battery with his fists. There was no riot, even on the theory of the defendants, for the affray which Itow said he was attempting to suppress was betwen Dunn and the two Japanese who were with him in the Chinese bunkhouse.

The judgment is affirmed.