## UNITED STATES v. VRILIUM PRODUCTS CO. et al.

### No. 10160.

United States Court of Appeals
Seventh Circuit.

Nov. 13, 1950.

Rehearing Denied Dec. 15, 1950.

Richard B. Austin, Samuel Morgan, Leslie E. Salter, and Morgan, Salter & Sellery, all of Chicago, Ill., for appellants.

Otto Kerner, Jr., U. S. Atty., Joseph E. Tobin, Asst. U. S. Atty., Chicago, Ill., Joseph L. Maguire, Attorney, Federal Security Agency, Washington, D. C., of counsel, for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

Defendants-appellants seek to reverse a conviction, based upon the verdict of a jury finding them guilty of a violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 301–392.

The information charging the offense was filed on January 20, 1947. It contained only one count. It charged that the defendants, on or about June 25, 1945, did unlawfully cause to be introduced and delivered for introduction into interstate commerce, for delivery to one Dr. R. C. Kistler, at Wyandotte, Michigan, one carton containing a number of tubes known as "Vrilium Catalytic Barium Chloride," a device within the meaning of 21 U.S.C.A. § 321(h), that said device when so caused to be introduced and delivered in interstate commerce was, then and there, misbranded within the meaning of 21 U.S.C.A. § 352(a).

On April 12, 1948, the defendants-appellants were arraigned and pleaded not guilty. At that time they were represented by counsel, and the case was set for trial on October 6, 1948. After several continuances the case was set down for April 4, 1949. On March 25, 1949, the first attorney they had employed withdrew. On April 4, 1949, Justus Chancellor and his son Justus, Jr., were substituted as counsel for defendants-appellants.

The defendants consented to the substitution. Mr. Chancellor, Sr. appeared on the motion to substitute. He then requested a continuance for sixty days, but this was denied and this case was re-set for April 11, 1949.

On April 8, 1949, the elder Mr. Chancellor again appeared on behalf of the defendants and moved for additional time to prepare for trial. The court then set the matter for trial on April 18, 1949. Thereafter the case was continued from time to time. Some continuations were on motion of the Government, and others were made to suit the convenience of the court. The younger Mr. Chancellor never appeared in the trial court on behalf of the defendants-appellants, although motions to quash the complaint and dismiss the information were filed and argued by his father.

Finally, and nearly a year later, on March 20, 1950, the case was called for trial. At that time Mr. Chancellor, Sr. requested a continuance because his son, who, he then said, was to try the case, had suffered a heart attack on the previous day and would be unable to proceed for two weeks. The father then claimed that because of his age he had not assumed the burden of a trial for several years. He also said that his hearing was not "extra good."

The court denied the continuance and the trial began. The Government took five whole days to present its case. The defense consumed seven days in the presentation of its evidence. An additional day was expended in arguments and instructions to the jury, and to its deliberation to reach a verdict.

On April 5, 1950, the jury returned its verdict finding the defendants guilty.

On April 26, 1950, the defendants, accompanied by Mr. Chancellor, Sr., again appeared before the trial court. A motion for a new trial was filed and denied, and sentence was pronounced.

The individual defendants, George C. Erickson and Robert T. Nelson, Jr., were sentenced to the custody of the Attorney General for one year and fined $1,000 each; the corporate defendant, Vrilium Products Company, was fined $1,000. On the same day Mr. Chancellor, Sr. filed notice of appeal on behalf of defendants-appellants.

At a later date, May 10, 1950, the attorneys who now appear in this court were substituted as attorneys for the appellants.

It is here argued that the convictions should be reversed because:

1. The appellants were deprived of their Constitutional right to effective counsel of

their own choice, which rendered the judgment of conviction against them a nullity;

2. The prosecution failed to prove that the defendants had shipped the devices in question in interstate commerce, and

3. That one instruction given was contrary to the evidence, usurped the function of the jury and constituted reversible error.

The first contention involves an attack on the denial by the trial court of defendants' motion for continuance made on March 20, 1950.

The ground upon which their request for delay was based was that Mr. Chancellor, Jr. had been stricken by a heart attack on the previous day. He was a member of the law firm, whose appearance had been filed on behalf of and with the consent of the defendants. Although he was one of their attorneys of record for more than eleven months, he never at any time appeared on their behalf. He did not even appear with his father and co-partner when the motion to quash the information and dismiss the case was argued. The father, although an elderly gentleman, had carried the entire burden up to that time; the son's name had never been even mentioned.

█ Under such circumstances the law is plain— the rule to be applied was well expressed in Isaacs v. United States, 159 U.S. 487, on page 489, 16 S.Ct. 51, on page 52, 40 L.Ed. 229, a prosecution for murder in the Territory of Alaska, where it was said: "That the action of the trial court upon an application for a continuance is purely a matter of discretion, and not subject to review by this court, unless it be clearly shown that such discretion has been abused, is settled by too many authorities to be now open to question."

The same rule was followed in Hardy v. United States, 186 U.S. 224, 22 S.Ct. 889, 46 L.Ed. 1137. The reason for which continuance was requested in both those cases was the absence of material witnesses.

In Lias v. United States, 4 Cir., 51 F.2d on 215, on page 216 et seq., in speaking of assignments of error, in a prosecution for conspiracy to violate the Prohibition Law, the court said:

"* * * the first of which is that the court erred in not granting a continuance or a change of venue, on the ground of the illness of the leading counsel for the defendant, who was the head of the firm representing them and because of articles appearing in various newspapers dealing with the case and an alleged attempt to kill one of the prosecution's witnesses in the case.

"The question of continuance was one addressed to the sound discretion of the trial court. This has been repeatedly held by this court, and it is scarcely necessary to cite authorities to that effect. * * *

"Here defendants were represented by two other members of the law firm, of which the leading member was ill; one of the attorneys representing appellants at the trial having been present before the commissioner. There was no good reason for continuance of the case upon ground of the illness of one of several attorneys, and the motion was properly denied. * * *"

On certiorari granted, the Supreme Court affirmed the Lias case in a *per curiam* opinion, 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505.

█ In the case at bar, appellants were represented by counsel of their own choice. We have examined the record and can find no indication that their counsel was incompetent or negligent. The insinuations now made on behalf of appellants that he was "ineffective" because of the loss of his sense of hearing, finds no justification in this record. In the face of the facts and circumstances shown by this record the first contention of the appellants must be overruled.

█ The contention that the Government failed to show beyond a reasonable doubt that the devices and labels in question were shipped in interstate commerce is likewise untenable. The appellants themselves called many witnesses from neighboring states to show that they had used devices similar to those in question with beneficial results. Many of these witnesses actually dealt in such devices. On this record it might fairly be said that there is some con-

**6**

flict in the testimony that the devices were falsely labeled. There can be no question that the devices, or others like them, were introduced into interstate commerce. The shipment charged in the information was adequately proven by the testimony of the agent for Railway Express Agency and its record, as well as consignee who appears to have been an agent for the defendant company engaged in part, at least, in selling their tubes.

As far as the third contention is concerned, it is important to note that the appellants have taken from the instructions of the court to the jury, transcript of which covered more than fifteen pages, four lines, and sought to make it appear therefrom that the court intended to direct the jury that the leaflets and labels therein referred to had actually been shipped in interstate commerce. This is decidedly unfair and improper as will become evident when the whole charge is considered.

At the outset of his instructions, the court said: "There are two broad general questions involved in the case with which you will be required to concern yourselves. The first pertains to the interstate commerce phase. In that regard the Government has charged the device accompanied by a label and leaflet were shipped in interstate commerce from Chicago to Wyandotte, Michigan. You will have to decide whether the device and labeling were so shipped. If you find that the device and labeling were not shipped from Chicago to Wyandotte then it will be necessary for you to return a verdict of not guilty for all the defendants. If you decide the device and labeling were shipped from Chicago to Michigan, for your second consideration it will then be necessary for you to determine whether or not the labels and leaflets contain a false and misleading statement."

Our examination of the record convinces us that the jury was fully and fairly instructed by the trial court, and that its verdict finding the defendants guilty is amply supported by the evidence.

The judgment of the District Court is affirmed.