UNITED STATES of America, Plaintiff-Appellee,

v.

MILLPAX, INC., a Corporation, and Roy F. Paxton, an Individual, Defendants-Appellants.

No. 13752.

United States Court of Appeals Seventh Circuit.

Jan. 15, 1963.

Rehearing Denied Feb. 21, 1963.

Charles Orlando Pratt, Washington, D. C., for appellant.

Edward R. Phelps, U. S. Atty., Springfield, Ill., Marks Alexander, Leon G. Scroggins, Asst. U. S. Attys., Springfield, Ill., Rodney R. Munsey, Attorney, Department of Health, Education and Welfare, Washington, D. C., of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Defendants, Millpax, Inc., and Roy F. Paxton, were found guilty after trial by jury on three counts of a five-count indictment charging them with the misbranding of a drug known as "Millrue," in that its labeling failed to bear adequate directions for use, as required by Section 502(f) (1) of the Federal Food, Drug, and Cosmetic Act, as amended, 21 U.S.C. § 352(f) (1), and with causing the introduction or delivery for introduction into interstate commerce of such preparation, so labeled, in violation of Section 301(a) of the Act, 21 U.S.C. § 331 (a), which prohibits the introduction or delivery for introduction into interstate commerce of any drug that is misbranded.

Defendant Millpax, Inc., until March 23, 1961, was a corporation organized and existing under the laws of the State of Illinois, with office and principal place of business at Carlock, Illinois. Defendant Roy F. Paxton was secretary-treasurer and principal stockholder of the corporation.

The product in question was packaged in bottles, bearing labels displaying the following printed and graphic matter:

"Millrue
Iron Tonic
Hematinic
Stomachic
Contents 8 Fl. Oz.
Manufactured by
Millpax, Inc.
Carlock, Illinois"

The errors relied on for reversal arise out of the claimed inadequacy of the evidence to support the verdict, the charge to the jury (which was not objected to), and the failure of the trial court to acquit the defendants on the ground that, as a matter of law, they were entrapped.

On May 2, 1960, Charles Armstrong, a Federal Food and Drug Inspector, wrote defendant Paxton from Memphis, Tennessee, ordering two bottles of Millrue. He enclosed a ten dollar money order. He stated in his letter that he had just been informed that he had cancer, and that he had read in the "Herald of Health" magazine about "your cancer cure—Millrue." In response to his letter,

he received a form letter,[1] prepared and signed by defendants' attorney, directing him to reread the article and to note that no claim is made by the writer or the manufacturer that Millrue cures anything. Concerning the claims made in the magazine article, the form letter to Inspector Armstrong said "Any person may state what he believes the product has done or has not done for him, and any person is free to draw his own conclusions therefrom." It is evident that the form letter was framed with the intention of drawing a cloak of legality around defendants' transactions. While there is a disclaimer in the letter as to any claims made directly by defendants, the jury is not required to blind itself to reality and fail to recognize the obvious intent of such a letter to adopt the testimonials made by others. No other purpose could be implied in view of the fact that the order from Armstrong specifically mentioned that he was suffering from cancer and that he wanted the Millrue to forestall his having to submit to surgery. We think it reasonable to recognize the plight of those suffering from cancer, their desperate frame of mind of which "cancer remedy" salesmen are undoubtedly aware, and the influence these complementary attitudes have on a transaction such as the one in question. It is obvious that defendants intended to be understood as adopting as their own the magazine testimonials. The statement in the disclaimer letter that "Any person may state what he believes the product

has done or has not done for him, and any person is free to draw his own conclusion therefrom," within the factual context present here, does not shield defendants from the consequences of their wilful acts.

Armstrong, upon receipt of the form letter, wrote another letter requesting the Millrue. In response thereto he received a package in the United States Mails from Millpax, Inc., containing two bottles of Millrue.

Both defendants were charged in Count III with responsibility for this interstate shipment of a misbranded drug.

▪ ■ Defendants contend that the preparation known as Millrue is not a drug, but is a food for special dietary use excepted by the Federal Food, Drug, and Cosmetic Act, as amended, from inclusion in the term "drug." As discussed above, however, the intention of the defendants was to have prospective purchasers regard it as a drug and so use it; hence, their own actions classified Millrue as a drug. Thus, the use of the term "drug" as used in the indictment and during the trial could not have been prejudicial to defendants.

On April 16, 1960, Inspector Gebhart from the St. Louis office of the Food and Drug Administration and Mrs. Rachel Harrington, a clerical employee of that office, visited defendants' place of business at Carlock, Illinois. They posed as a married couple from Memphis, Tennessee and indicated they came to Carlock

---

1. The alleged disclaimer letter reads as follows:

"Many thanks for your letter and order and it is regretted that Mr. Paxton cannot write to you personally as the mail has been tremendous and the Company is a small one.

"Your interest in the article referred to is natural, but terming the product a "blood purifier" therein is a misnomer. To "purify" connotes that as to any particular substance it is freed from extraneous matter or from anything that debases, pollutes, or contaminates it. The blood may be variable through bodily functions or malfunctions, and by ingestion, deficiencies when existent may be aided.

"If you will again read the article re-

ferred to which was written by Don C. Matcham, you will find that no claim is made that the product cures anything, either by the writer or the manufacturer. Any person may state what he believes the product has done or has not done for him, and any person is free to draw his own conclusion therefrom.

"If you still desire to order please advise by return mail, otherwise your money will be returned to you, as there is no desire by the manufacturer to sell this product under false pretenses.

    "Sincerely,
      Millpax, Inc.,
      By ————————————
        Theodore W. Hinds"

to see if defendant Paxton could find out what was wrong with Mrs. Harrington. They did not suggest to Paxton that she was suffering from any specific disease or ailment.

Paxton asked her to sit on a couch. As soon as she was seated, he began examining her left foot. When he examined the third toe, he told Mrs. Harrington that she had gas on the upper colon which is usually where cancer starts. In response to being asked if she had cancer, he stated that she did. Paxton recommended his Millrue tonic for this condition. He recommended also that she follow a diet and he gave her a printed copy of the directions for such diet. He told her that he had never lost a case of cancer or leukemia, and that she would be all right in three months. He also related that he had acquired the formula for Millrue about forty years ago from an old Indian doctor who wanted him to marry his daughter. The diet list and the label on the bottle were the only written directions given the agents for use of Millrue. Agent Gebhart and Mrs. Harrington purchased six bottles of Millrue and departed. Count IV of the indictment charged defendants with having caused to be delivered to Gebhart and Mrs. Harrington for introduction into interstate commerce the misbranded drug.

A showing that drugs were introduced into interstate commerce is sufficient to show that they were, as well, delivered for introduction into interstate commerce. United States v. Vrilium Products Co., 185 F.2d 3 (7th Cir.1950).

The government contends that where a misbranded drug is sold and the seller has knowledge that the purchaser intends to transport the drug to another state, this knowledge, in and of itself, is sufficient to bring the transaction within the ambit of 21 U.S.C. § 331(a), i. e., that the sale is an introduction or delivery for introduction into interstate commerce of the misbranded drug. It relies for support of this contention on Drown v. United States, 198 F.2d 999 (9th Cir.1952), cert.

denied 344 U.S. 920, 73 S.Ct. 385, 97 L. Ed. 709; and United States v. Sanders, 196 F.2d 895 (10th Cir.1952). For our purposes we need not decide if these cases support the broad interpretation given to 21 U.S.C. § 331(a) by the government.

While it is true that defendant Paxton not only sold the misbranded product to the government agents and did so intending that it would be taken by them to Tennessee, this intention was and could only have been formulated as a result of a representation made by the government agents which the evidence shows had no basis in reality. If we are to assume that the seller participates in some degree in the intent of the buyer so as to make the buyer's intent his intent, then we must also assume that, where a material misrepresentation by the buyer is made that the transaction is of an interstate character, a federal crime based on interstate commerce cannot exist. If this were not so, government agents would be able to turn a purely "over-the-counter" sale of a misbranded product into a federal crime merely by an off-hand statement, completely untrue, that they intended to transport the goods across a state line. Here there was no evidence that Gebhart or Harrington came from Tennessee, intended to return to Tennessee, or had ever been in Tennessee. In fact, the evidence is conclusive that St. Louis, Missouri was their point of origin and also their destination when they left Carlock after making the purchase.

The fact that they did cross a state line is immaterial in a situation where the crime is made federal only by virtue of the wrongdoers' participation in their expressed intent. The only intent ever expressed was totally false and we decline to extend defendants' knowledge of the agents' intent to that deliberately concealed so as to make them aware of the interstate nature of the sale. If this seems a formalism, it is a formalism required under our federal system—particularly where the statute specifically calls for an introduction or delivery for introduction into interstate

commerce as a requirement and essential element of the corpus delicti. Situations not involving interstate commerce are not before us and we specifically decline to treat them. Cf. United Cigar Whelan Stores Corp. v. United States, 113 F.2d 340 (9th Cir.1940); Sherman v. United States, 10 F.2d 17 (6th Cir.1926); United States v. Abda, 32 F.Supp. 23 (D.C.M.D.Pa.1940). We are concerned solely with a statute that defines a criminal act under the cognizance of federal authority having as an essential element thereof knowledge of or intent to engage in or affect interstate commerce and actions commensurate with such knowledge or intent.

We think that the interstate element of the crime must rest on something more solid than the pretenses of government agents to satisfy the minimum requirements of basic fair play—that is, due process. Since the interstate element of Count IV was not proved, we hold that the conviction under that count must be vacated.

█ On May 6, 1960, Jack A. Forbragd, an Inspector stationed in San Francisco, addressed a letter to defendant Paxton requesting a bottle of Millrue. The letter stated that he had stomach pains, was constipated, and was sure he had cancer. It further stated that he had read in the "Herald of Health" magazine that Millrue was a cancer cure. He enclosed a money order for $5.20. In response, he received a bottle of Millrue. The labeling contained no reference to cancer, stomach pains or constipation. Defendants, at the trial, attempted to show that a disclaimer letter, worded identically to that sent to Inspector Armstrong, was mailed to Inspector Forbragd. Moreover, Paxton testified that Forbragd in a telephone call from San Francisco acknowledged receipt of the form letter and nonetheless ordered the drug. Forbragd denied receipt of any such letter or that he had made the telephone call. On cross-examination of defendants' witnesses, it was brought out that no attempt had been made to find a record of the telephone call; that the person who allegedly mailed the letter didn't remember mailing it; and that the carbon introduced and claimed to be a copy of the form mailed to Forbragd may have been prepared solely for the purposes of trial. The Forbragd sale was the basis for Count V of the indictment charging defendants with having caused to be introduced and delivered for introduction into interstate commerce a drug misbranded in that its labeling failed to bear adequate directions for use for the purposes and conditions for which the drug was intended, namely, the treatment of stomach pains, constipation, and cancer.

█ It is elementary that where the ground for reversal is insufficiency of the evidence to support the verdict, the evidence must be construed in the light most favorable to the government and in the light of all reasonable inferences which the jury may draw therefrom. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Although defendants introduced versions of the transactions in question different from those of the government, we are convinced that the jury was justified in accepting the government's proof. There is substantial evidence to support the verdict as to Counts III and V.

█ Defendants, on appeal, raise for the first time the defense of entrapment as a matter of law. It is uniform practice for appellate courts to refuse to consider alleged errors not raised in the trial court unless the result would lead to a miscarriage of justice. Ramirez v. United States, 294 F.2d 277 (9th Cir. 1961); United States v. Sferas, 210 F.2d 69 (7th Cir.1954), cert. denied, Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086. We are convinced that no injustice resulted from the failure of the trial court to rule that entrapment had been established as a matter of law. Entrapment as a matter of law is established only where undisputed testimony makes it patently clear that an otherwise innocent person was induced to commit the act complained of by the trickery, persuasion, or fraud of a government

agent. Sorrells v. United States, 287 U. S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). We believe the surrounding circumstances brought out in the evidence support the conclusion that defendants would have sold the misbranded Millrue regardless of who the purchasers were, and the fact that government agents used a ruse to conceal their identity does not require a different conclusion. The issue of entrapment was properly left to the jury.

█ We have examined the instructions given by the trial judge and find them to have correctly stated the issues and the law governing the case. The instructions were not objected to at the trial and in the absence of substantial error capable of resulting in a miscarriage of justice we decline to consider the assignments of error now raised for the first time on appeal. United States v. Vasen, 222 F.2d 3 (7th Cir.1955).

The judgment entered by the District Court convicting defendants on Count IV is reversed. The judgment convicting defendants on Counts III and V is affirmed.