[No. 37665.   Department Two.   September 30, 1965.]

THE STATE OF WASHINGTON, *Respondent*, v. BRENT MERRILL STREETER, *Appellant.*\*

*Wettrick, Toulouse, Lirhus & Hove* and *Arnold J. Barer,* for appellant.

*Charles O. Carroll* and *August F. Hahn,* for respondent.

HAMILTON, J.—The defendant stands convicted of seven counts of burglary and one count of grand larceny.

On appeal, he makes two assignments of error. He contends (a) that the trial court did not determine the voluntariness and admissibility of certain incriminating oral statements and a written confession before submitting them to the jury, as required by Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0, and (b) that the written confession was the product of an implied promise that the statement would not be used against him, thus involuntary.

Briefly, the background facts are as follows: On the afternoon of October 31, 1963, several King County law enforcement officers, armed with a search warrant, entered a dwelling house in Seattle in search of stolen property. In the course of the search, they apprehended and arrested

\*Reported in 406 P.2d 590.

the defendant who then, and shortly thereafter, made incriminating oral statements relative to the several offenses forming the basis of the various counts. Subsequently, on November 4, 1963, an officer from the Kirkland City Police Department interviewed defendant concerning the burglarizing of a Kirkland cannery, an offense constituting one of the counts. Defendant admitted participation in the Kirkland burglary and signed a written statement to that effect. Before trial commenced, defendant challenged the voluntariness of the oral and written statements. A hearing was held in the absence of the jury to determine the issues raised by defendant's challenge.

At this hearing defendant, in essence, asserted that the oral statements were the result of force and fear. The officers who heard the oral admissions denied the use of any force or threats. Concerning the written statement, defendant testified as follows:

Q. Now, with regard to the alleged statement given by you to Sergeant George Dahl of the Kirkland Police Department, would you relate in your own words what he told you at the time that that statement was made? A. *I can't remember, to tell the truth.* Q. Well, did he tell you that the statement was going to be used against you? A. No. Q. Did he tell you that this statement was not going to be used against you? A. He said most likely it would not be used against me. Q. And did you believe that it would not be used against you? A. *Yes, to the best of my knowledge, I did.* Q. How long had you known Sergeant Dahl prior to the discussion on November 4th at 3:00 p.m.? A. Well, I think I met Mr. Dahl in 1960, or early part of 1961. I am not too sure. Q. And for what reason did you believe Mr. Dahl's statement to you that it would not likely be used against you? A. Well, I feel that Mr. Dahl is a friend of mine, and I just believed that it wouldn't be used against me. (Italics ours.)

On cross-examination, the defendant further testified:

Q. . . . You didn't commit any burglaries in Kirkland Cannery, Tyee Construction, didn't remove a thing? A. Cannerv. Q. The cannery you did? A. Yes. Q. In other words, the cannery you did burglarize? A. Yes. Q. You admit that? A. Yes.

The officer taking the statement testified relative thereto as follows:

Q. Sergeant Dahl, at the time you took this statement from Mr. Streeter, was there any conversation relating to what you intended to do? A. Yes, there was. Q. As a result of taking the things? A. There was. Q. And did that conversation relate to the fact that you promised Mr. Streeter that no charge would be brought? A. *No, I did not promise this.* Q. What did you tell Mr. Streeter? A. I advised — at the time, well, I advised at the time that I did not contemplate charges by our department. *However, I was very explicit in explaining to him this was not my prerogative, and that the complete case file would be forwarded to the Prosecutor's Office.* Q. You did not promise that if he signed the statement, that it would not be used against him? A. No, sir. (Italics ours.)

At the conclusion of the testimony and the arguments of counsel, the trial court summarized its findings upon defendant's challenge as follows:

It is not disputed that there was no violence threatened or used, unless it be that he was faced with a gun to start with, but there is no force after he was placed under arrest and questioned. There was no gun pointed at him. It is not contended there was. So I find that there was no force used for threat, and no promises made as to State's Exhibit 2 [a written summary of defendant's oral statements[1]], I believe it is, and that no definite inducement as to Exhibit 1 [the written confession]. I find that they are admissible.

And, speaking particularly with reference to the taking of the written confession, the trial court further said:

All right. I will on that disputed finding, find that the officer was positive in what he said, and the defendant wasn't positive what the officer said about it. He was very vague in his memory, and I think the officer was telling the truth about what he said, and based on that, I do not think that as far as that part of it is concerned, that confession is inadmissible.

A jury was thereafter selected and, during the course of the trial, the oral admissions and the written confession

---

[1]The written summary designated as exhibit No. 2 was not submitted to the jury.

were admitted in evidence. Defendant did not take the stand and testify before the jury. His conviction followed.

We find no merit in defendant's contention that the trial court did not, prior to submission of the oral and written statements to the jury, determine their voluntariness. In support of this contention, defendant makes reference to certain preliminary remarks of the trial judge concerning the procedure required by Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0, and the principles confirmed by *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 Sup. Ct. 1774, 1 A.L.R.3d 1205 (1964). These remarks, however, are taken out of context. A full review of the preliminary proceedings and of the trial judge's decision at the conclusion thereof, with particular reference to the portions hereinabove quoted, dispels the unfortunate inferences created by the inapposite remarks referred to by defendant. We are satisfied the trial judge did determine the voluntariness of the confessions in question before submitting them to the jury.

Defendant's principal contention on appeal is that the trial court erred in its determination of voluntariness and admissibility of the written confession concerning the Kirkland burglary. He does not contend nor assert that the confession is false, for, as the testimony indicates, he frankly admitted during the course of the preliminary hearing before the trial court that he did participate in the Kirkland burglary. He contends, rather, that the confession was the product of an implied promise that it would not be used against him and, therefore, its admission into evidence contravened his rights under the fifth and fourteenth amendments of the United States Constitution. In support of his contention, defendant relies upon *Bram v. United States,* 168 U.S. 532, 42 L. Ed. 568, 18 Sup. Ct. 183 (1897), and *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 Sup. Ct. 1489 (1964).

We have not heretofore had occasion to pass directly upon the precise issue raised by this contention, because RCW 10.58.030 (based upon Laws of Wash. Terr. 1854,

§ 96, p. 117; Laws of Wash. Terr. 1873, § 232, p. 234; Code of 1881, § 1070) provides in part:

> The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; . . . .

Whatever lingering doubts may have remained concerning the import of RCW 10.58.030, as it bore upon confessions induced by promises, rather than coercion, have been effectively obliterated by the United States Supreme Court decision in *Malloy v. Hogan, supra,* wherein that court states (p. 6):

> We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgement by the states. . . .
>
> *Brown v. Mississippi,* 297 U. S. 278, was the first case in which the Court held that the Due Process Clause prohibited the States from using the accused's coerced confessions against him. The Court in *Brown* felt impelled, in light of *Twining* [*Twining v. New Jersey,* 211 U.S. 78, 53 L. Ed. 97, 29 Sup. Ct. 14], to say that its conclusion did not involve the privilege against self-incrimination. "Compulsion by torture to extort a confession is a different matter." 297 U. S., at 285. But this distinction was soon abandoned, and today the admissibility of a confession in a state criminal prosecution is tested by the same standard applied in federal prosecutions since 1897, when, in *Bram v. United States,* 168 U. S. 532, the Court held that "[i]n criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the Constitution of the United States, commanding that no person 'shall be compelled in any criminal case to be a witness against himself.' " *Id.,* at 542. *Under this test, the constitutional inquiry is not whether the conduct of state officers in obtaining the confession was shocking, but whether the confession was "free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . ."* *Id.,* at 542-543; see also

*Hardy v. United States,* 186 U. S. 224, 229; *Wan v. United States,* 266 U. S. 1, 14; *Smith v. United States,* 348 U. S. 147, 150. In other words the person must not have been compelled to incriminate himself. We have held inadmissible even a confession secured by so mild a whip as the refusal, under certain circumstances, to allow a suspect to call his wife until he confessed. *Haynes v. Washington,* 373 U. S. 503. (Italics ours.)

In the instant case, we are convinced, as was the trial court, that the officer's version of the conversation surrounding the making of the written confession is straightforward and true, and that the defendant's recollection of the conversation is hazy. Under the officer's version, he advised the defendant, in essence, that it was not his prerogative to file charges but that it was his duty to turn any statement made by the defendant over to the prosecuting attorney. In short, he told the defendant the truth. Against this background, the defendant gave the written confession in question. Applying the "free and voluntary" test of the *Malloy* case, *supra,* to the circumstances here revealed, we are satisfied that the officer's statements to the defendant did not amount to a direct or indirect promise of whole or partial immunity. It cannot, therefore, be realistically stated that the confession was the product of such inducement.

The judgment and sentence is affirmed.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., and STAFFORD, J. Pro Tem., concur.

---

November 19, 1965. Petition for rehearing denied.